IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 3:09-cr-30120-NJR |
| CHARLIE A. RODGERS, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Compassionate Release re First Step Act filed *pro se* by Defendant Charlie A. Rodgers. (Doc. 53). Rodgers asks the Court to grant his request for compassionate release and enter an order reducing his sentence to time-served. For the reasons set forth below, the motion is denied.

### BACKGROUND

On December 16, 2010, Rodgers was sentenced to 194 months of imprisonment for forcibly assaulting, resisting, impeding, intimidating, and interfering with a Task Force Officer ("TFO") of the United States Marshals Service in the performance of his duties, and for being a felon in possession of a firearm. (Docs. 1, 35). Rodgers's conviction arose after a multi-agency detail observed two suspicious individuals in front of an abandoned building and approached them on August 11, 2009. Rodgers fled from the agents and pulled a fully loaded semiautomatic pistol from his waistband. He ignored the agents' orders to stop and was eventually caught by a TFO. Rodgers pointed the firearm at the

TFO before he was subdued. (Doc. 60, p. 11). According to the website for the Bureau of Prisons ("BOP"), he is scheduled to be released on June 5, 2024.[1]

On May 26, 2020, Rodgers filed his first *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. 49). Soon after, the motion was dismissed for failure to exhaust administrative remedies. (Doc. 52). Rodgers filed his second *pro se* Motion for Compassionate Release on January 5, 2021. (Doc. 53). The parties do not dispute that Rodgers exhausted his administrative remedies before moving for compassionate release a second time.

Rodgers now argues he should be granted compassionate release due to extraordinary and compelling circumstances. (*Id.*). He believes that the COVID-19 pandemic offers sufficient grounds for compassionate release due to the BOP's failure to "effectively" prevent the spread of the disease. He first references a recent outbreak at Greenville that resulted in over 180 inmates contracting COVID-19. Then, he states that over two-thirds of the inmates at Greenville have contracted COVID-19 since April 1, 2020. (*Id.* at p. 1). Additionally, he argues that the design of prisons renders proper self-care as recommended by the CDC impossible. (*Id.* at p. 2). Finally, Rodgers argues that he suffers from pre-existing medical conditions, high blood pressure and obesity, that greatly increase the risk of severe illness or death should he contract COVID-19. (*Id.* at pp. 1-2).

Rodgers also submits that he is no longer a danger to the community due to his

---

[1] Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 14, 2021).

ongoing commitment to self-improvement and rehabilitation. To support this argument, Rodgers points to the numerous Adult Continuing Education courses that he has completed, as well as the fact that he has maintained employment in the food service department. He argues that these experiences will assist in a smooth transition back into society upon release and emphasizes that he has only received one non-violent infraction during the 11 years he has been imprisoned. Should his motion be granted, Rodgers plans to reside with his sister. (*Id.* at p. 2).

The Government opposes the motion, arguing that Rodgers has failed to establish extraordinary and compelling reasons for compassionate release. (Doc. 60). The Government emphasizes that compassionate release was not designed to release prisoners due to the mere existence of COVID-19 and claims that Rodgers's medical conditions fail to satisfy the severity required to necessitate release. (*Id.* at pp. 7-9). There is no current record of Rodgers suffering from high blood pressure or receiving treatment for it, and while Rodgers is overweight, he has already contracted and fully recovered from COVID-19. (*Id.* at p. 9). Since Rodgers has received ongoing medical care and recovered from COVID-19 safely while in the custody of the BOP, the Government submits that there is no life-threatening medical condition establishing extraordinary and compelling circumstances. (*Id.* at pp. 9-10). Additionally, the BOP has taken significant steps to mitigate prisoners' risk, and Greenville only had one inmate who had tested positive for COVID-19 at the time of the Government's response. (*Id.* at p. 3).

The Government further contends Rodgers would be a danger to the public if he were released and that the § 3553(a) factors require denial of the motion. (*Id.* at pp. 10-

11). Rodgers has been given a "High" risk of recidivism score by the BOP and has an extensive and violent criminal history including the following offenses: Aggravated Battery (1995), Attempted Robbery (2000), Felon in Possession of a Weapon (2006), and Aggravated Fleeing (2009). (*Id.* at p. 10). The Government also notes that Rodgers had already spent significant time in prison before his current conviction, but that failed to deter the actions leading to his current imprisonment. Due to the violent nature of his conduct prior to arrest and his extensive and violent criminal history, the Government argues that this Court should deny Rodgers's motion for compassionate release. (*Id.* at pp. 10-11*)*.

In reply, Rodgers argues that while he has contracted and recovered from COVID-19, post-recovery immunity has been documented to last for as little as three weeks. He also argues that some re-infected individuals experience more severe symptoms. (Doc. 63, p. 1). He also states that the wide-scale change undertaken by the BOP does not equate to effective change. Taking the statistics utilized in the Government's response, he argues that 751 recovered inmates in a population of 1,150 inmates reveals that the BOP has a 66% failure rate pertaining to the protection of the inmate population. (*Id.* at p. 3). He further emphasizes that both high blood pressure and obesity are listed on the CDC website as risk enhancers thus qualifying his circumstances as extraordinary and compelling. (*Id.* at p. 4). He also emphasizes that his post-sentencing conduct should be taken as "the most accurate indicator of his present . . . tendencies." (*Id.* at pp. 5-6).

### THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate

release first had to request it from the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the BOP to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

After such a motion is filed, either by the Director of the BOP or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), the Application Notes to the policy statement set forth specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. § 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or the community" pursuant to 18 U.S.C. § 3142(g).

## DISCUSSION

Under Application Note 1(A)(ii) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for reducing a sentence exist where the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Here, Rodgers has failed to establish extraordinary and compelling circumstances that warrant granting his motion for compassionate release. Rodgers has provided no evidence that he suffers from high blood pressure or that he cannot care for himself within the correctional facility. Further, Rodgers's obesity alone does not present extraordinary circumstances. *See United States v. Meyer*, No. 14-CR-230, 2020 WL 6287697, at *8 n.9 (E.D. Wis. Oct. 27, 2020) ("Nearly 3/4 of the American people are either obese or overweight . . . so it may be difficult for a court to conclude that such a condition, without more, will qualify as unusual or extraordinary for purposes of compassionate release."). Finally, the fact that Rodgers already contracted COVID-19 and fully recovered weighs in favor of denying his motion. "[H]aving previously contracted COVID-19 with mild symptoms does not constitute an extraordinary and compelling basis to reduce a defendant's sentence." *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021).

Even if Rodgers had successfully demonstrated extraordinary or compelling reasons for release, in order to grant his motion, the Court must also consider the 18 U.S.C. § 3553(a) factors and determine that Rodgers is not a danger to the public. Here,

the Court cannot make that finding. As argued by the Government, Rodgers's attempted flight while illegally possessing a fully loaded firearm could have led to violent or deadly consequences. Further, his previous time in prison failed to serve as an adequate deterrent for Rodgers. (Doc. 60, p. 11). Given his extensive and violent criminal history, the Court is unable to say that Rodgers would not be a danger to the safety of any other person or the community if he were released.

Finally, the Court commends Rodgers for his reported commitment to self-improvement and his participation in ongoing education. Unfortunately, those accomplishments are not enough to warrant compassionate release under 18 U.S.C. § 3582.

Because Rodgers has not established any extraordinary and compelling reasons warranting a reduction in his term of imprisonment, and because the Court is concerned Rodgers would be a danger to the community if he were released, his Motion for Compassionate Release (Doc. 53) is **DENIED**.

**IT IS SO ORDERED.**
**DATED:** July 15, 2021

_Nancy J. Rosenstengel_
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**